Jabari-Jason Tyson-Phipps
Pierce & Kwok LLP
299 Broadway
Suite #1405
New York, NY 10007
646-934-9694
J.J-Tyson-Phipps@piercekwok.com

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE CELEBRITY SOURCE LLC, <br><br> A NEW JERSEY LIMITED LIABILITY COMPANY <br><br>         Plaintiff, <br><br> vs. <br><br><br> DAVID JOHNSON AND <br><br> STRATEGIC VISION LLC DBA STRATEGIC VISION PR GROUP, <br><br> A GEORGIA LIMITED LIABILITY COMPANY <br><br>         Defendants. | Case No.: 22-9440 <br><br> **VERIFIED COMPLAINT** <br><br><br><br><br><br><br> JURY TRIAL DEMANDED |

## CELEBRITY SOURCE'S ORIGINAL COMPLAINT FOR FALSE DESIGNATION OF ORIGIN, FALSE ADVERTISING, TRADEMARK DILUTION, UNFAIR COMPETITION, AND DEFAMATION

Plaintiff, The Celebrity Source, LLC, a New Jersey Limited Liability Company, ("CELEBRITY SOURCE" or "Plaintiff"), by and through its attorneys, Jabari-Jason Tyson-Phipps, and Pierce & Kwok LLP, complain and allege against David JOHNSON ("JOHNSON") and Strategic Vision LLC DBA Strategic Vision

PR Group, a Georgia Limited Liability Company, ("STRATEGIC VISION") (or collectively the "Defendants") as follows:

## NATURE OF THE DISPUTE

1.    This action is brought based on the  Defendants' persistent, repeated, egregious, willful, knowing, and unauthorized use of CELEBRITY SOURCE's famous "Celebrity Source" Mark, which has been in use for over 34 years, in connection with the Defendants' marketing and sales of its services despite being aware of the Plaintiff's exclusive intellectual property rights under federal, state, local, and common law to the Mark and not having any affiliation, connection or business dealings with CELEBRITY SOURCE.

2.     Accordingly, CELEBRITY SOURCE now brings this action against the Defendants for (1) False Designations of Origin and False Descriptions and Representations Under Section 43(a) of the Lanham Act; (2) Trademark Dilution Under 43(c) of the Lanham Act; (3) Deceptive Acts and Practices Under Section 349 of New York General Business Law; (4)Trademark Dilution and Likelihood of Injury to Business Reputation Under Section 360-l of New York General Business Law; (5)Trademark Infringement Under Common Law; (6)Unfair Competition Under Common Law; (7) Defamation Under the Laws of the State of New York; (8) Defamation Under the Laws of the State of Georgia; (9) Defamation Under Common Law; (10) Deceptive Trade Practices Under the Laws of the State of Georgia; (11) Unjust Enrichment; and (12) use of name with intent to deceive Under NY General Business Law § 133.

3.    All allegations and paragraphs herein are based on information and belief, the truth of which will be ascertained at trial.

## THE PARTIES

4.    Plaintiff CELEBRITY SOURCE is a New Jersey Limited Liability Company having its principal place of business at 66 Davis Avenue, Bloomfield, NJ 07003.

5.      CELEBRITY SOURCE is a boutique public relations, marketing, advertising, and communications agency founded in 1988 that specializes in part in matching celebrities and brand ambassadors with companies to meet public relations, marketing, and other related goals. It is a world-famous celebrity booking agency with offices in New Jersey, New York, and California. It regularly conducts business with clients in the state and city of New York including working with numerous A-List celebrities such as Oprah Winfrey, Martha Stewart, Jamie Foxx, Mark Cuban, Will Smith, Sharon Stone, Morgan Freeman, Magic Johnson, William Shatner, and many others. Through over 34 years of hard work and marketing, CELEBRITY SOURCE has built goodwill and made the "Celebrity Source" brand famous and recognizable in the industry and throughout the world.

6.      Defendant Johnson, upon information and belief, is a resident of the state of Georgia whose principal place of business is located at 2727 Paces Ferry Rd SE Building 1 Suite 750 Atlanta, GA 30339.

7.      Defendant STRATEGIC VISION, upon information and belief, is a Georgia Limited Liability Company that does business as Strategic Vision PR Group and whose principal place of business is located at 2727 Paces Ferry Rd SE Building 1 Suite 750 Atlanta, GA 30339.

8.      Upon information and belief, Defendant STRATEGIC VISION is a public relations agency that was founded by and is solely owned and operated by Defendant JOHNSON which has in the past and continued to solicit and conduct business in the state of New York specifically in the Southern District of New York including but not limited to "public relations analysis" services for authors attending the BookExpo at the Jacob Javits Convention Center in Manhattan and providing their services at the Toy Fair in New in New York City. The Defendants, claim to have represented individuals from multiple states including representing Florida Congressional Candidate Carla Spalding in 2020. According to their website their reputation includes having their services featured on OAN, ESPN, People, CNN, the Wall Street Journal, New York Times, and several other national and international media sources.

9.      Warner Brothers Discovery Inc. ("WBD") is an American multinational mass media and entertainment conglomerate organized under the laws of the state of Delaware based in Midtown Manhattan, New York City. WBD's principal office is located at 230 Park Ave S, New York, NY 10003.

10.    WBD owns and operates or has stakes in many notable companies including the Magnolia Network, CNN, HBO, DC Comics, the Tuner Networks including TNT and TBS, the Discovery Channel, the CW, TLC, and many others. It is a major international company in the world of media, celebrities, and their endorsements.

11.    Upon information and belief, the William Morris Endeavor Agency ("WME") is a subsidiary and company of Endeavor Operating Company LLC ("Endeavor "), a Delaware foreign limited liability company with offices located at 11 Madison Avenue New York, NY 10010

12.    Upon information and belief, WME was formed in 1898 and according to their website is "the longest-running talent agency" and "the global leader in sports, events, media and fashion." Endeavor represents artists in film, television, music, theater, digital media, and publishing; the NFL and NHL; and owns the Ultimate Fighting Championship, Miss Universe, and several other entertainment related businesses. They are a major player in the business of celebrity endorsements on which CELEBRITY SOURCE depends and in which its reputation is built.

13.    Caroline C. Barney ("BARNEY") is a "best-selling author, keynote speaker, storyteller, and marketing consultant" in "the New York City Metropolitan Area according to her LinkedIn Profile." She is the author of the book "Pull Yourself Together." See below:



14.    TouchPoint Press ("TOUCHPOINT") is a publisher of digital and print fiction and nonfiction based in Brookland, Arkansas.

## **JURISDICTION AND VENUE**

15.    This action is based in part on Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114, Sections 43(a) and (c) of the Lanham Act, 15 U.S.C. § 1125(a) and (c), Sections 133, 349, and 360-1 of the New York Business law, and the common law of the State of New York.

16.    The Court has original subject matter jurisdiction over this dispute pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121 (actions arising under the Lanham Act), 28 U.S.C. § 1331 because this is a civil action arising from federal law (federal question), 1338(a) (any Act of Congress relating to patents or trademarks), and 1338 (b) (any action asserting a claim of unfair competition joined with a substantial and related claim under the trademark law) for the claims arising out of the violations of Sections 32(1)(a) and 43(a) and (c) of the Lanham Act. This Court has supplemental jurisdiction pursuant to 28 U.S.C.§ 1367(a) for all other claims asserted in this Complaint because those claims are so closely related to the federal claims asserted herein as to form part of the same case and controversy.

17.    This Court has personal jurisdiction over the Defendants pursuant to FRCP 4 (k)(1)(a) and NY CPLR § 302(a). Upon information and belief, the truth of which will be ascertained at trial, the Defendants committed tortious acts without the state of New York causing injury to CELEBRITY SOURCE within the state of New York by violating the New York General Business Law and should have reasonably expected their actions to have consequences in the state of New York. Further, upon information and belief, the truth of which will be ascertained at trial, the Defendants have conducted systematic and continuous business activity within this forum jurisdiction including but not limited to the sale, discussions of, and marketing of their services including with the parties in this matter including discussions which relate to the causes of action addressed herein which have caused harm to the Plaintiff.

18.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

**FACTUAL BACKGROUND**

**A.  "Celebrity Source" is an Established Common Law Trademark**

19.     CELEBRITY SOURCE was founded in 1988 and has been in continuous business since then becoming a world-renowned celebrity endorsement firm operating internationally from offices in New Jersey and on both coasts of the United States in the celebrity capitals of the country: New York City and Los Angeles.

20.     The name "Celebrity Source" is synonymous in the industry and elsewhere with Celebrity Source LLC the Plaintiff in this matter.

21.     The Plaintiff has exclusively used the "Celebrity Source" Mark for its business since 1988 and has defended against the use of the mark by others.

22.     The Plaintiff owns and operates "www.thecelebritysource.com" as well as "www.celebritysource.com" the website domains associated with the "Celebrity Source" Mark.

23.     The "Celebrity Source" Mark is pending registration with the USPTO Serial Number 97576311.

24.     At all relevant times was the Plaintiff the exclusive user of the Mark, defended the Mark, and was the sole party associated with the Mark.

**B.  The Defendants Misrepresented Their Services as Coming from or Being Associated with Celebrity Source**

25.     On or about, May 10, 2022, John MARSICANO ("MARSICANO") the Vice President for publicity at WBD, who owns and operates the Magnolia Journal, sent an email to TOUCHPOINT and BARNEY

in which he stated that he was made aware of a public endorsement for BARNEY's book "Pull Yourself Together" on Meta's Instagram platform which purported to be from his client Joanne GAINES ("GAINES").

26.    MARSICANO made clear in no uncertain terms that GAINES did not make that endorsement and demanded that it be removed immediately from social media and anywhere it may exist. This email is reproduced below:



27.    Upon information and believe the same alleged endorsement still exists on websites such as bookshop.org and reads: "Pull Yourself Together is the book that will allow you to be resilient and succeed in any endeavor...to be the best person you can be in whatever you strive to achieve." -Joanna GAINES, co-founder of Magnolia, bestselling author, editor-in-chief of Magnolia Journal" It is reproduced below:



28.     Upon information and belief, Defendant JOHNSON was forwarded the email from MARSICANO and responded minutes later. In his response to MARSICANO, Defendant JOHNSON stated that neither BARNEY nor TOUCHPOINT was responsible for the fraudulent endorsement. Defendant JOHNSON claimed that his company, Defendant STRATEGIC VISION obtained the endorsement through CELEBRITY SOURCE. This email is reproduced below:

**Book Endorsements**
1 message

David Johnson <███████@strategicvisionpr.com>                    Tue, May 10, 2022 at 6:00 PM
To: "███████@discovery.com" <███████████████
Cc: "███████@touchpointpress.com" <████████████████

Mr. Marsicano,

I am writing to you on behalf of Touch Point Press and Caroline Barney regarding your email concerning possible endorsement fraud. Neither Ms. Barney nor Touch Point Press engaged in any endorsement fraud. The endorsements were obtained via Celebrity Source and we acted upon good faith that they were legitimate. Based upon your email all references to your client Joanna Gaines are being removed. With Amazon there may be a lag period of one day.

Again, please accept our humble apologies,

Sincerely,
David Johnson
Strategic Vision PR group
Ph: ████████████

29.     CELEBRITY SOURCE was contacted by Alicia Glekas Everett ("EVERETT") the Head of Business Affairs for WME stating that she represents BARNEY. She stated was told that the fraudulent

endorsement came from CELEBRITY SOURCE and wanted to speak to someone in CELEBRITY SOURCE's

legal department about the fraudulent endorsement.   The email is reproduced below:



30.     When CELEBRITY SOURCE was made aware of the claim that it provided a fraudulent

endorsement it immediately obtained counsel and opened an investigation into who was using its tradename

without permission ruining its reputation to prevent any further economic damage.

31.     On or about May 11, 2022, CELEBRITY SOURCE's CEO Laura Kessler ("KESSLER")

contacted the Defendants by phone to see if he had been misled by someone posing as a representative of

CELEBRITY SOURCE.

32.     Defendant JOHNSON gave conflicting stories as to the origin of the fraudulent Endorsement to

EVERETT AND KESSLER. Defendant JOHNSON not knowing that he was speaking to KESSLER gave a

random name and stated that the named person no longer works at CELEBRITY SOURCE according to the

person he spoke with at CELEBRITY SOURCE.  When asked for that person's name he gave KESSLER her own

name and the phone number from the CELEBRITY SOURCE website.

33.     Counsel reached out to the Defendants via phone and email asking for an explanation for their

claim about getting the endorsement from CELEBRITY SOURCE.  This email is reproduced below:

**From:** [redacted]@piercekwok.com>
**Sent:** Wednesday, May 11, 2022 5:17 PM
**To:** [redacted]@strategicvisionpr.com>
**Cc:** info@touchpointpress.com
**Subject:** Re: Caroline Barney/Touch Point Press/Pull Yourself Together

Mr. Johnson,

Per our earlier phone call, I am an attorney representing The Celebrity Source. My client and I understand that you have referenced The Celebrity Source as having provided several false celebrity endorsements for your client, Caroline Barney's, new book "Pull Yourself Together". The Celebrity Source has not provided any services related to this matter to you, Strategic Vision PR, Touch Point Press, or Caroline Barney in the past and has not provided any celebrity endorsements for you or your client.

1. You must cease and desist from referencing The Celebrity Source, Celebrity Source, or any derivation thereof as having provided services to you, in any communications of any kind with third parties related to this matter. Any reference to my client under these circumstances is severely damaging to their reputation and business.
2. If you did in fact make arrangements with someone purporting to be Celebrity Source, provide us with copies of all correspondence with such party, any agreements entered into, and details of any payments made to such party.

Please put us in touch with your attorney so we can discuss this matter further and work together on a resolution.

34.      CELEBRITY SOURCE's counsel also reached out to MARSICANO to clarify what he was told was the origin of the fraudulent endorsements offered by the Defendants. MARSICANO stated that Defendant Johnson "stated in no uncertain terms that he did, in fact, work directly with The Celebrity Source LLC" i.e., the Plaintiff. The email is reproduced below:

**From:** John Marsicano <[redacted]@discovery.com>
**Sent:** Wednesday, May 18, 2022 6:03 PM
**To:** Frank Kwok <[redacted]@piercekwok.com>
**Cc:** Stephen Lewis <[redacted]@magnolia.com>; info@thecelebritysource.com; [redacted]@jayaramlaw.com>
**Subject:** Re: David Johnson/Caroline Barney/TouchPoint Press/Pull Yourself Together

Mr. Kwok,

Copying Joanna's attorney here (Cc'd) for visibility. I am traveling at the moment, but will certainly forward you all communications from Mr. Johnson as soon as possible - likely this evening or tomorrow morning.

As you may imagine, Mr. Johnson stated in no uncertain terms that he did, in fact, work directly with The Celebrity Source LLC — which clearly was not, and never had been, the case.

Will be back in touch shortly and thank you for your attention to this matter. Let me know if there's anything else I can do...

Back in touch soon.

35.      Defendant JOHNSON gave conflicting stories as to the origin of the fraudulent Endorsement to MARSICANO, KESSLER, and EVERETT.  He told MARSICANO that he worked with CELEBRITY SOURCE directly.  He told KESSLER that she told him, in a conversation that never occurred, that the endorsement came from an employee of hers, who does not exist, who he claimed does not work at her company anymore. He told

the attorney working for EVERETT that the endorsement was obtained by BARNEY directly and TOUCHPOINT

was not involved as can be seen in the email chain reproduced below:

From: Alicia Glekas Everett <███████████>
Date: Wednesday, May 11, 2022 at 2:26 PM
To: Laurie Kessler <███████████>
Subject: FW: Endorsements

Hi Laurie,

See below:  Note that one of our clients' attorneys spoke to David Johnson today, and Johnson told him that Touch Point (the publisher) wasn't involved after all, and that the author (Caroline Barney) had herself secured the endorsements from Celebrity Source.

Does her name ring any bells with you?

Thanks,
Alicia

Alicia Glekas Everett | WME

Pronouns: She, Her, Hers

From: David Johnson <DJohnson@sidstrategicvisionpr.com>
Sent: Tuesday, May 10, 2022 5:32:59 PM
To:
Cc: info@touchpointpress.com <info@touchpointpress.com>
Subject: Endorsements

EXTERNAL

Ms. _____,

I am writing to you on behalf of Touch Point Press and Caroline Barney regarding your email concerning possible endorsement fraud.  Neither Ms. Barney nor Touch Point Press engaged in any endorsement fraud.  The endorsements were obtained via Celebrity Source and we acted upon good faith that they they were legitimate.  Based upon your email all references to your clients,  Glennon Doyle and Brene Brown are being removed.  With Amazon there may be a lag period of one day.

Again, please accept our humble apologies,

Sincerely,
David Johnson
Strategic Vision PR group
Ph: (404) 380-1079

36.     Despite representing to WME, WBD, TOUCHPOINT, and BARNEY that they worked with and

received the endorsement from CELEBRITY SOURCE, the fact is in reality the Defendants have NEVER

worked with or been associated with the Plaintiff.

37.     CELEBRITY SOURCE's Counsel attempted to reach out to the Defendants and their counsel on

multiple occasions to try to minimize the damage and resolve this matter but have gone ignored forcing the

Plaintiff to bring this action.

38.     The Defendant's false assertion that CELEBRITY SOURCE was the source of the fraudulent

endorsement caused CELEBRITY SOURCE to suffer pecuniary and reputational harms including the potential

loss of business in the state of New York with WBD, WME, TOUCHPOINT, and other media companies it does

business with or had the potential to do business with as well as BARNEY and other celebrities and well-known

figures it does business with or has the potential to do business with as a result of the false accusations, assertions,

and association with the Defendants.

**FIRST CLAIM FOR RELIEF**

**False Designations of Origin and False Descriptions and Representations Under Section 43(a) of the**

**Lanham Act**

39.     CELEBRITY SOURCE hereby incorporates by reference and realleges each and every allegation

above.

40.     JOHNSON on behalf of himself and or his company STRATEGIC VISION on May 10, 2022,

sent the email above stating that he received the fraudulent endorsement by GAINES from CELEBRITY

SOURCE.

41.     The Defendants sent that communication in interstate commerce specifically to the offices of

WBD in the city and state of New York in the Southern District.

42.     Upon information and belief, BARNEY and TOUCHPOINT purchased in interstate commerce

celebrity endorsement brokering services from the Defendants which were falsely represented to have originated

from CELEBRITY SOURCE.

43.     The source of the endorsement is material as it goes to its credibility and veracity.

44.     MARSICANO the representative from Warner Brother Discovery, EVERETT the Head of

Business Affairs for WME, BARNEY, and the representatives from TOUCHPOINT specifically stated that they

believed the Defendants' statements that the false endorsement came from CELEBRITY SOURCE showing

actual confusion as to the origin of the service provided.

45.     CELEBRITY SOURCE had and currently has no dealings, affiliation, or business with the

Defendants and did not supply them with that or any other endorsement.

46.     The Defendants have made and will continue to make, substantial profits and gains from their

unauthorized use of the "Celebrity Source" Mark to which they are not entitled in law or equity.

47.     The acts of the Defendants alleged herein were intentional, willful, with bad faith, and were

committed with the intention of deceiving and misleading the public and causing harm to CELEBRITY SOURCE

and made with the full knowledge and gross disregard of CELEBRITY SOURCE'S intellectual property rights.

48.     The Defendants' acts and the conduct complained of herein constitute unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a).

49.     CELEBRITY SOURCE has suffered and will continue to suffer, irreparable harm from the Defendants' unauthorized use of the "Celebrity Source" Mark unless restrained by law.

50.     As a direct and proximate result of the Defendants' infringing and unlawful acts, CELEBRITY SOURCE has suffered and will continue to suffer damages in an amount that is not presently ascertainable, but will be established at trial, and, at minimum, exceeds $75,000, exclusive of interest and costs.

51.     By reason of the foregoing, CELEBRITY SOURCE is entitled to injunctive relief against the Defendants, and anyone associated therewith, to restrain further acts of unfair competition and service mark infringement, and to recover any damages proven to have been caused by reason of the Defendant's aforesaid acts of unfair competition and false designation of origin, and to recover enhanced damages based upon the willful, intentional, and/or grossly negligent activities of the Defendants.

## SECOND CLAIM FOR RELIEF

## Trademark Dilution Under 43(c) of the Lanham Act

52.     CELEBRITY SOURCE hereby incorporates by reference and realleges each and every allegation above.

53.     The "Celebrity Source" mark has been in continuous use in the United States as a designation of services from CELEBRITY SOURCE since at least 1988.

54.     The CELEBRITY SOURCE was founded by Rita Tateel, daughter of Holocaust survivors in California, and has grown and spread across the country opening an office in New York thereby spreading its influence on both coasts.

55.     CELEBRITY SOURCE has been featured in the Los Angeles Times Sunday edition as early as September 11, 1988, see below:

# Los Angeles Times

SUNDAY MORNING, SEPTEMBER 11, 1988/PRICE: ONE DOLLAR

## CALENDAR

LOS ANGELES TIMES · SEPTEMBER 11, 1988

### Doin' It for Charity (and P.R. and Gifts)

By ISABEL GUZMÁN



*Fund raiser Rita Tateel and Jack Szolis consider candidates for Szolis's female co-chair of the 1989 L.A. Marathon celebrity team.*

To some celebrities, the ultimate homage is an Academy Award. To others, it's having a spot to event hear their names.

Among those with a golf, tennis or ski tournament are the late Bing Crosby (who started it all in 1937), Andy Williams, Bob Hope, Sammy Davis Jr., Danny Thomas, George (Goober) Lindsey, Pat Boone, Michael Landon, Dean Martin (the least wanted), Carl Reiner, Chad Everett, John Denver, Chris Lemmon, Monty Hall, Tom Lopez, Dom Deluise, Hal Linden, Clint Eastwood and Billy Barty.

How does it happen? Either the star has a pet charity for which he wants to help raise money, a corporate sponsor asks the star to participate or a charity seeks out the star to lend his name.

Because of that, a cottage industry dealing in celebrities is alive and thriving in Hollywood.

*Please Turn to Page 24*

F/H/SUNDAY, SEPTEMBER 11, 1988/PAGE **3**

## Celeb Events

*Continued from Third Page*

Rita Tateel is the "rookie" among the celebrity fund-raisers. The daughter of Holocaust survivors, she was born on a chicken ranch in Fontana and remembers sitting on a curb in Hollywood with her parents watching the annual Christmas parade. She worked for the Jewish Federation for 17 years and learned to know and love working with celebrities. Her company is the Celebrity Source.

"I have access to over 3,000 celebrities and a computer listing everything about them from hobbies to home towns to T-shirt sizes to every conceivable thing in which they might be interested. When they complete filling out my five-page, super-confidential questionnaire, there are no secrets," she says with a laugh.

Two of her prime clients are the Hollywood Christmas Parade and the City of Los Angeles Marathon. This Thanksgiving will mark her third parade. It ranks second in size in the nation, after the Rose Parade, and attracts the most stars, about 100. It's syndicated to more than 140 cities in this country, 86 nations, so the parade provides major exposure—and thus is attractive—to any celebrity.

Even so, when arranging the Hollywood parade she has found that "there are certain celebrities who simply do not do parades. They just don't like being in a car and waving to the crowds . . . they feel self-conscious about it." Another problem is the holiday itself. In many cases stars go home for Thanksgiving—"and Los Angeles isn't always home," she said.

Among Tateel's coups: taking Emma Samms, Joan Collins, Susan Howard and Gordon Thomson to London in 1986 for Prince Charles' Youth Business Trust. "This charity helps disadvantaged youths

start their own business. It wasn't until the stars actually arrived at Grosvenor House Hotel that the organizers really believed it possible to have [so many] American stars under one roof," she recalls.

Again, the stars agreed with alacrity to the trip. But who wouldn't when it meant a free stopover in New York for shopping, and top accommodations everywhere?

Tateel says she often gets calls from stars who say, "I want to go back to my hometown for the weekend. Can you arrange an event for me?"

But of course.

To pull it off, she'll work with chambers of commerce and other civic groups. Generally, the star gets a free trip home, a parade and is lionized for the weekend.

Tateel is closemouthed about her fees, but she does admit being paid $1,000 per star name by Pepsi-Cola just for getting photo releases to use stars' pictures in a calendar in a joint venture with the California PTA. The stars who signed: Jason Bateman, Malcolm-Jamal Warner, Melissa Gilbert, Edward James Olmos, the pop group Menudo, Kim Fields and the Hiroshima band.

Often stars are enlisted to dress up local galas such as the ballet or a theater opening. Again, in exchange for a limousine and good seats, they'll glitter.

Most-wanted stars among Tateel's clients include Michael Jackson, George Michael, Whitney Houston, Barbra Streisand, Cher, Paul Hogan, Sylvester Stallone, Patrick Swayze, Bill Cosby, Tony Danza, Michael Landon, Lucille Ball, Whoopi Goldberg, Robin Williams, Billy Crystal and Jay Leno.

The least-requested? Tiny Tim, Herve Villechaize, Jim and Tammy Bakker and Mark Spitz. □

56.     CELEBRITY SOURCE has been featured in trade magazines such as Complete woman as early

as 1988. See below:



# ★ STAR POWER

Celebrities attract attention. That fact is the basis of Rita Tateel's recently established business, The Celebrity Source, which has her rubbing shoulders with all the biggest stars and making money doing it!



★ Corbin Bernsen (of *L.A. Law* fame) with a grateful arm around Rita Tateel after the L.A. Marathon which "changed his life."

**By Susan F. Handy**

This past May, Rita Tateel withdrew $20,000 of personal savings and "took the plunge" by going into business for herself. Now two rooms in her house are filled with computers, a Fax machine, and "lots of telephones;" and business is hopping! Here, the entrepreneur tells Complete Woman about her new business and her experiences with the stars.

★

**Complete Woman:** What exactly does The Celebrity Source offer, and who utilizes your services?
**Rita Tateel:** We secure celebrities for personal appearances as a means of promotion, but it's much more involved than that. We handle the full gambit of celebrity participation in events, special promotions, and charity as well as corporate functions. Our clients are organizations that are looking to work with a celebrity or celebrities, usually for a specific event, due to the high impact that stars have and the attention they bring to whatever they are involved with.
**CW:** What specific clients do you have so far?
**RT:** We already have four very prestigious accounts: the L.A. Marathon, the Hollywood Christmas Parade, the "Just

❝ I have a very good network of people who can provide me with information. In fact, I think the CIA would love to get hold of my computer files. ❞

Say No" Foundation, and the 1989 Baseball All-Star Game at Anaheim Stadium.
**CW:** How do you go about selecting and approaching the celebrities for these events?
**RT:** Well, we keep up to 150 pieces of personal data on over 3000 celebrities. We know what their hometowns are, their favorite causes, their interests, political leanings, whether they smoke, are married, have children, etc. So when we approach them, it's based on information we already know about them, and we are more likely to be able to motivate them to say "yes."
**CW:** Why wouldn't an organization just go through the celebrity's agent or manager?
**RT:** Unless there's a lot of money involved for the star, unless it's a for-profit commercial endorsement situation, the agents don't have much interest in it because they get paid on commission. So if the appearance is for a charity, for example, the agent may be very nice and kind on the phone, but the truth is that they don't even tell their clients

COMPLETE WOMAN/DECEMBER 1988

57.    The Los Angeles Business Journal authored articles about CELEBRITY SOURCE's services as early as October 1990. See below:



58.    CELEBRITY SOURCE has worked with numerous famous "A-list" celebrities since the 1990s. See below:

*Tony:*
*Celebrities*
*who attended*

## the CELEBRITY Source

### CELEBRITIES SCHEDULED TO ATTEND

### KNOTT'S BERRY FARM HALLOWEEN HAUNT

### MEDIA EVENT ON SATURDAY, OCTOBER 9, 1993
(As of October 8, 1993)

RYAN FRANCIS "Sisters"

| | | |
|---|---|---|
| TATYANA M. ALI | "The Fresh Prince of Bel-Air" (Ashley Banks) | (NBC) |
| ZACHERY TY BRYAN | "Home Improvement" (Brad Taylor) | (ABC) |
| BRANDON CALL | "Step By Step" (J.T. Lambert) | (NBC) |
| BRUCE CAMPBELL | "The Adventures of Brisco County, Jr." (Brisco) "Army of Darkness" | (FOX) |
| DUSTIN DIAMOND | "Saved By The Bell: The College Years" (Screech) | (NBC) |
| NICOLE EGGERT | "Baywatch" (Summer Quinn) | (SYND.) |
| DAVID FAUSTINO | "Married with Children" (Bud Bundy) | (FOX) |
| BRIAN AUSTIN GREEN | "Beverly Hills 90210" (David Silver) | (FOX) |
| JEREMY JACKSON | "Baywatch" (Hobie Buchannon) | (SYND.) |
| STACI KEANAN | "Step By Step" (Dana Foster) | (ABC) |
| CIRROC LOFTON | "Star Trek: Deep Space Nine" (Jake Sisko) | (SYND.) |
| JODIE SWEETIN | "Full House" (Stephanie Tanner) | (ABC) |
| TIFFANI-AMBER THIESSEN | "Saved by the Bell: The College Years" (Kelly Kapowski) | (NBC) |
| JENNA VON OY | "Blossom" (Six LeMeure) | (NBC) |
| ANGELA WATSON | "Step By Step" (Karen Foster) | (ABC) |
| ~~JALEEL WHITE~~ | "Family Matters" (Steve Urkel) | (ABC) |

8033 Sunset Boulevard, Suite 1108, Los Angeles, California 90046
Tel. (213) 651-3300.   Fax (213) 651-3397

Los Angeles • New York • London • Paris • Hawaii • Australia

59.     The "Celebrity Source" Mark has acquired distinctiveness; been in use for over 30 years; had a

substantial amount of advertising and publicity; its geographical extent stretches across the United States and the

world in numerous channels of trade. It is well recognized in the industry, there are no other similar marks, and it

is currently pending federal registration. As such, it meets the definition of a famous mark under 15 U.S.C. 1125(c).

60.     At all relevant times, the Defendants knew of the famous "Celebrity Source" Mark and used the mark in the past and continue to use the mark to make substantial profits and gains from their unauthorized use of the "Celebrity Source" Mark to which they are not entitled in law or equity.

61.     The Defendants' wrongful acts will continue unless enjoined by this Court.

62.     The acts of the Defendants alleged herein were intentional, willful, with bad faith, and were committed with the intention of deceiving and misleading the public and causing harm to CELEBRITY SOURCE and made with the full knowledge and gross disregard of CELEBRITY SOURCE'S intellectual property rights.

63.     The Defendants' acts and the conduct complained of herein constitute service mark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

64.     CELEBRITY SOURCE has suffered and will continue to suffer, irreparable harm from the Defendants' unauthorized use of the "Celebrity Source" Mark unless restrained by law.

65.     As a direct and proximate result of the Defendants' infringing and unlawful acts, CELEBRITY SOURCE has suffered and will continue to suffer damages in an amount that is not presently ascertainable, but will be established at trial, and, at minimum, exceeds $75,000, exclusive of interest and costs.

66.     By reason of the foregoing, CELEBRITY SOURCE is entitled to injunctive relief against the Defendants, and anyone associated therewith, to restrain further acts of unfair competition and service mark infringement, and to recover any damages proven to have been caused by reason of the Defendant's aforesaid acts of unfair competition and dilution, and to recover enhanced damages based upon the willful, intentional, and/or grossly negligent activities of the Defendants.

**THIRD CLAIM FOR RELIEF**

**Deceptive Acts and Practices Under Section 349 of New York General Business Law**

67.     CELEBRITY SOURCE hereby incorporates by reference and realleges each and every allegation above.

68.     Through its solicitations and communications misappropriating the famous "Celebrity Source" Mark, the Defendants have engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in injury to consumers in New York.

69.     By the acts described above, the Defendants have willfully engaged in deceptive acts or practices in the conduct of business and furnishing of goods in violation of Section 349 of the New York General Business Law.

70.     The Defendants' acts have caused and will continue to cause, irreparable injury to CELEBRITY SOURCE. CELEBRITY SOURCE has no adequate remedy at law and is thus damaged in an amount not yet determined.

**FOURTH CLAIM FOR RELIEF**

**Trademark Dilution, Blurring, Tarnishing, and Likelihood of Injury to Business Reputation Under Section 360-l of New York General Business Law**

71.     CELEBRITY SOURCE hereby incorporates by reference and realleges each and every allegation above.

72.     Under New York state law dilution is available if: (1) the mark has "selling power" or, in other words, a distinctive quality; and (2) the two marks are substantially similar. Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc., 875 F.2d 1026 (2d Cir. 1989).

73.     CELEBRITY SOURCE is the exclusive owner of the famous "Celebrity Source" Mark.

74.     Through prominent, long, and continuous use in commerce, including commerce within New York, the "Celebrity Source" Mark has become and continues to be famous and distinctive.

75.     By the acts described above, the Defendants have diluted the distinctiveness of the famous "Celebrity Source" Mark and caused a likelihood of harm to CELEBRITY SOURCE's business reputation in violation of Section 360-1 of the New York General Business Law.

76.     The Defendants' wrongful acts will continue unless enjoined by this Court.

77.     The Defendants' acts have caused and will continue to cause, irreparable injury to CELEBRITY SOURCE. CELEBRITY SOURCE has no adequate remedy at law and is thus damaged in an amount not yet determined but upon information and belief over $75,000.

## FIFTH CLAIM FOR RELIEF

### Trademark Infringement Under Common Law

78.     CELEBRITY SOURCE hereby incorporates by reference and realleges each and every allegation above.

79.     By the acts described above, the Defendants have engaged in trademark infringement in violation of the common law of the State of New York.

80.     The Defendants' acts have caused and will continue to cause, irreparable injury to CELEBRITY SOURCE. CELEBRITY SOURCE has no adequate remedy at law and is thus damaged in an amount not yet determined.

## SIXTH CLAIM FOR RELIEF

### Unfair Competition Under Common Law

81.     CELEBRITY SOURCE hereby incorporates by reference and realleges each and every allegation above.

82.     By the acts described above, the Defendants have intentionally engaged in unfair competition in violation of the common law of the State of New York.

83.     The Defendants' acts have caused and will continue to cause, irreparable injury to CELEBRITY SOURCE. CELEBRITY SOURCE has no adequate remedy at law and is thus damaged in an amount not yet determined.

## SEVENTH CLAIM FOR RELIEF

## Defamation Under the Laws of the State of New York

84.     CELEBRITY SOURCE hereby incorporates by reference and realleges each and every allegation above.

85.     Defendant JOHNSON on his behalf and or on behalf of his company Defendant STRATEGIC VISION on May 10th, 2022, authored the email referred to and embedded above in which he communicated in interstate commerce to MARSICANO and other third parties that CELEBRITY SOURCE engaged in fraud by providing him with fake endorsements.

86.     Matching celebrities with companies for endorsements is a core part of CELEBRITY SOURCE's business and on what its reputation is based.

87.     JOHNSON knew at the time of his communication to the third parties that his statements were false or should have known them to be false at the time he made them.

88.     CELEBRITY SOURCE suffered reputational and pecuniary damages as a result of JOHNSON's false statements.

89.     The Defendants' conduct was malicious, willful, wanton, and done with reckless disregard for CELEBRITY SOURCE's rights. Accordingly, an award of punitive damages is warranted to be granted to CELEBRITY SOURCE.

## EIGHTH CLAIM FOR RELIEF

### Defamation Under the Laws of the State of Georgia

90.     CELEBRITY SOURCE hereby incorporates by reference and realleges each and every allegation above.

91.     The Defendants' conduct was malicious, willful, wanton, and done with reckless disregard for CELEBRITY SOURCE's rights. Accordingly, an award of punitive damages is warranted to be granted to CELEBRITY SOURCE.

## NINTH CLAIM FOR RELIEF

### Defamation Under Common Law

92.     CELEBRITY SOURCE hereby incorporates by reference and realleges each and every allegation above.

93.     The Defendants' conduct was malicious, willful, wanton, and done with reckless disregard for CELEBRITY SOURCE's rights. Accordingly, an award of punitive damages is warranted to be granted to CELEBRITY SOURCE.

## TENTH CLAIM FOR RELIEF

### Deceptive Trade Practices Under the Laws of the State of Georgia

94.     CELEBRITY SOURCE hereby incorporates by reference and realleges each and every allegation above.

95.     Georgia's Fair Business Practices Act § 10-1-393(b) (1) makes unlawful the "[p]assing off goods or services as those of another" among other unfair or deceptive acts or practices.

96.     For the reasons stated above the Defendants have violated Georgia's Fair Business Practices Act §
10-1-393(b) (1) willfully, wantonly, and with reckless disregard for CELEBRITY SOURCE's rights.
Accordingly, an award of punitive damages is warranted to be granted to CELEBRITY SOURCE.

### ELEVENTH CLAIM FOR RELIEF

#### Unjust Enrichment

97.     CELEBRITY SOURCE hereby incorporates by reference and realleges each and every allegation
above.

98.     In New York, the elements of an unjust enrichment claim are "that (1) the other party was
enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party
to retain what is sought to be recovered." Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 182 (2011).

99.     Upon information and belief, the Defendants solicited business and made a profit purporting to
broker endorsement deals using CELEBRITY SOURCE's name and its "Celebrity Source" Mark to which they
are not entitled in law or equity as CELEBRITY SOURCE is the sole and exclusive owner of the name and mark.

100.    CELEBRITY SOURCE did not license or give any right to the Defendant to use its name or
mark.

101.    As stated above, JOHNSON acknowledged in an email dated May 10, 2022, that he claimed to
get the false endorsement that he sold and was upon information and belief paid for from CELEBRITY SOURCE.

102.    Any money paid for brokering an endorsement deal using CELEBRITY SOURCE's name and
mark would rightfully belong to the Plaintiff absent any agreement which there was none.

103.    The Defendants have not paid CELEBRITY SOURCE any amount for the use of its name, nor
have they remitted any of the money they were paid for the endorsement to CELEBRITY SOURCE.

104.    It is against equity and good conscience to permit the Defendants to retain any money they made
using the "Celebrity Source" name and mark and for that reason, CELEBRITY SOURCE is entitled to
disgorgement of whatever money the Defendants made using its name and mark.

## TWELFTH CLAIM FOR RELIEF

### Use of Name with Intent to Deceive Under Section 133 of the New York General Business Law

105.    CELEBRITY SOURCE hereby incorporates by reference and realleges each and every allegation above.

106.    The Defendants have made and will continue to make, substantial profits and gains from their unauthorized use of the "Celebrity Source" name to which they are not entitled in law or equity.

107.    The acts of the Defendants alleged herein were intentional, willful, with bad faith, and were committed with the intention of deceiving and misleading the public and causing harm to CELEBRITY SOURCE and made with the full knowledge and gross disregard of CELEBRITY SOURCE'S intellectual property rights.

108.    The Defendants' acts and the conduct complained of herein constitute a violation of Section 133 of the New York General Business Law.

109.    CELEBRITY SOURCE has suffered and will continue to suffer, irreparable harm from the Defendants' unauthorized use of the "Celebrity Source" name unless restrained by law.

110.    By reason of the foregoing, CELEBRITY SOURCE is entitled to injunctive relief against the Defendants, and anyone associated therewith, to restrain further acts of unfair competition, to recover any damages proven to have been caused by reason of the Defendant's aforesaid acts, and to recover enhanced damages based upon the willful, intentional, and/or grossly negligent activities of the Defendants.

### PRAYER FOR RELIEF

**WHEREFORE**, based on the foregoing, CELEBRITY SOURCE prays for a judgment against the Defendants as follows:

A.  A Declaration that the Defendants have:

a.   infringed CELEBRITY SOURCE's "Celebrity Source" service mark;

b.   violated Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a);

c.   violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

d.   violated Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c);

e.   violated Section 133 of the New York General Business Law;

f.   been unjustly enriched;

g.   defamed CELEBRITY SOURCE;

h.   engaged in deceptive acts and practices under Section 349 of the New York General Business Law;

i.   diluted the CELEBRITY SOURCE service mark in violation of Section 360-l of the New York General Business Law;

j.   engaged in service mark infringement under the common law of the State of New York; and

k.   engaged in unfair competition in violation of the common law of the State of New York.

B.   An injunctive order is issued permanently enjoining and restraining the Defendants, their subsidiaries, divisions, branches, affiliates, predecessors or successors in business, parents, and wholly-owned or partially-owned entities of the parties, and any entities acting or purporting to act for or on behalf of the foregoing, including any agents, employees, representatives, officers, directors, servants, partners, and those persons in active concert or participation with them, from:

a.   Engaging in any act of unfair competition and or service mark dilution by utilizing any service mark that is identical or confusingly similar to the "Celebrity Source" mark; and

b.    Making any statement or representation whatsoever, using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any services offered, sold, or any way originating from the Defendants are in any manner associated, licensed, sponsored, authorized or approved by, or connected with CELEBRITY SOURCE;

C.  An Order directing the Defendants to remove the "Celebrity Source" mark from any future communications and to issue both a press release correcting the false designation and direct communication to any party to which they communicated using the "Celebrity Source" mark correcting any confusion and making clear that the Defendants have no affiliation with CELEBRITY SOURCE;

D.  An Order directing the Defendants, pursuant to 15 U.S.C. § 1116(a), to file with the Court and serve on CELEBRITY SOURCE's counsel within 30 days after service of the injunction, a written report, sworn under oath, setting forth in detail the manner and form in which the Defendants have complied with the injunction;

E.  An Order directing an accounting to determine the Defendants' profits resulting from their unlawful activities;

F.  An Order awarding CELEBRITY SOURCE compensation for any and all damages, injury, or harm pursuant to all applicable federal, state, local, and common laws including but not limited to:

   a.  Actual damages;

   b.  Statutory damages;

   c.  Profits, damages, and fees, to the full extent available, pursuant to Sections 349 and 360-l of the New York General Business Law; and

   d.  Exemplary and punitive damages to the full extent available under and other applicable laws.

G.  An Order directing the Defendants to pay, jointly and severally, full restitution and/or disgorgement of all profits, including any lost profits, and benefits that may have been obtained by the Defendants as a result of its wrongful conduct pursuant to all applicable federal, state, local, and common laws.

H.  An Order awarding CELEBRITY SOURCE treble damages resulting from the Defendants' willful and intentional conduct pursuant to all applicable federal, state, local, and common laws.

I.  An Order awarding CELEBRITY SOURCE pre-judgment interest;

J.  A Declaration that this case is "exceptional" within the meaning of 15 U.S.C. § 1117 and 35 U.S.C. § 285;

K. An Order awarding CELEBRITY SOURCE its reasonable costs of the suit and attorney's fees pursuant to all applicable federal, state, local, and common laws.

L. An Order awarding CELEBRITY SOURCE any further relief this Court shall deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rules 38(b) and 38(c) of the Federal Rules of Civil Procedure, CELEBRITY SOURCE requests a trial by jury for all issues so triable.

Dated: This 31st day of October 2022.
New York

Respectfully submitted,

**Pierce & Kwok LLP**

Jabari-Jason Tyson-Phipps
NY# 4689451
SDNY #JT9451
EDNY # JT8685
SCOTUS # 4689451
Pierce & Kwok LLP
299 Broadway
Suite #1405
New York, NY 10007
646-934-9694
J.J-Tyson-Phipps@piercekwok.com
**Attorney for Plaintiff**

# VERIFICATION

I, Laura Kessler, declare as follows:

1. I am the CEO of Celebrity Source LLC, the Plaintiff in this action, I am authorized to represent all of its interests, and this Verified Complaint was done at my direction.

2. I have reviewed and have personal knowledge of the allegations made in the above Verified Complaint and if called on to testify I would competently testify as to the matters stated herein.

3. I believe the allegations that I do not have personal knowledge of to be true based on specified information, documents, or both.

4. By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

5. I verify under penalty of perjury that the foregoing is true and correct. 28 USC § 1746

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Executed on this 2nd day of November 2022.

Laura Kessler